UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | | |
|---|---|---|
| JESSE CHARLES GUDGER, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:10-CV-151 |
| | ) | *Greer/Inman* |
| JOHNSON CITY POLICE DEPARTMENT | ) | |
| (Officer?), JOHNSON CITY MEDICAL | ) | |
| CENTER HOSPITAL (Doctor?), | ) | |
| WASHINGTON COUNTY DETENTION | ) | |
| CENTER, and SOUTHERN HEALTH | ) | |
| PARTNERS (Emily & Stephanie), | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM and ORDER**

Jesse Charles Gudger, III, a former prisoner in the Washington County Detention Center ("WCDC") in Jonesborough, Tennessee, brings this *pro se* civil rights complaint for injunctive and monetary relief under 42 U.S.C. § 1983, asserting that he was mistreated and denied adequate medical care at the Johnson City Medical Center Hospital ("Medical Center"), while he was being transported from the Medical Center to the WCDC, and during his confinement therein, (Doc. 2, Compl.). Plaintiff's application to proceed *in forma pauperis* is **GRANTED**, (Doc. 1).

### **I. Screening the Complaint**

Under 28 U.S.C. § 1915(e)(2), a court is required to screen a civil complaint brought by a litigant proceeding *in forma pauperis* and to dismiss an action at any time if the court determines that it is frivolous or fails to state a claim upon which relief can be granted. *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by*

*Jones v. Bock*, 549 U.S. 199 (2007). In performing this task, the Court hews to the rule that *pro se* pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A complaint which contains only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" is insufficient to state a claim for relief. *Ashcroft v. Iqbal*, 552 U.S. 662, 678 (2009). Instead, the pleading must encompass "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," so as to clothe the claim in "facial plausibility." *Id*.

After reviewing the pleading filed in this case, the Court finds that a *sua sponte* dismissal is the appropriate disposition of this action. Thus, no service shall issue and this lawsuit will be dismissed.

## II. Discussion

A. <u>Claims for Injunctive Relief</u>

The jurisdiction of federal courts is limited to "cases and controversies." U.S. CONST. art. III, § 2, cl.1. A case becomes moot "when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome." *Cleveland Branch, NAACP*, 263 F.3d at 530 (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Here, plaintiff seeks injunctive relief from the alleged wrongful treatment and conditions to which he was subjected at the WCDC, but he has been released from that facility. Clearly, improving the complained of conditions in the WCDC would not benefit plaintiff in the slightest because he is no longer confined there and does not indicate that he expects to be imprisoned in the WCDC in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (noting that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

2

B. Claim One

In his initial claim, plaintiff contends that, after being in an automobile accident in mid-July of 2009, he was taken to the Medical Center, stayed a day or two, and then suddenly was discharged to the custody of the Johnson City Police Department. Plaintiff maintains that the Medical Center doctor who discharged him released him too soon and that the only pain medication the doctor gave him upon his discharge was Ibuprofen 800 M.G., which (by inference) was insufficient to address his pain. Defendant doctor's actions, so plaintiff asserts, constituted negligence, malpractice, and inhuman, cruel and unusual punishment.

*1. The Law*

To state a claim upon which relief may be granted in a § 1983 action, plaintiff must establish that a defendant: 1) deprived him of a federal right 2) while acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978); *Black v. Barberton Citizens Hospital*, 134 F.3d 1265, 1267 (6th Cir. 1998). The conduct of a private defendant is actionable under § 1983 only if the conduct can be fairly attributable to the state, *see Catz v. Chalker*, 142 F.3d 279, 289 (6th Cir. 1998), and the conduct of a private party may be fairly attributable to the state only if the conduct is so closely connected to the state that it may be fairly treated as that of the state.

*2. Analysis*

Plaintiff has not shown that the defendant Medical Center doctor who discharged him was acting under color of state law when the defendant engaged in the challenged course of conduct. Nor has plaintiff shown that this defendant's conduct was fairly attributable to the state. Thus, the state action component of a § 1983 claim is missing here.

Even if the state action element had been satisfied, plaintiff would state no claim against this defendant physician. Medical negligence, which is the theory underlying plaintiff's allegations against the Medical Center doctor, is not a constitutional tort, even if the asserted victim happens to be a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

3

C. Claim Two

Plaintiff next alleges that, after he was placed in the custody of the Johnson City Police Department, a police officer put him in the back seat of a cruiser and transported him to the WCDC. Plaintiff charges that the officer's actions were negligent and that those actions exposed him to unidentified risks to his health and survival, in violation of his right not to be subjected to inhuman, cruel and usual punishment.

*1. The Law*

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). A prisoner states a claim of cruel and unusual punishment under the Eighth Amendment by alleging that prison officials have, with deliberate indifference, exposed him to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health," or that prison officials were deliberately indifferent to his serious medical condition." *Id.* at 35; *Estelle*, 429 U.S. at 103. Thus, an Eighth Amendment claim has both an objective and a subjective component. The objective prong requires a prisoner to show that he suffered an objective, sufficiently serious deprivation and the subjective prong requires him to show that a prison official was deliberately indifferent to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 833-34, 42 (1994).

With respect to living conditions, the objective aspect of the test is met where plaintiff shows that "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling*, 509 U.S. at 36. In the medical context, a demonstration of a serious medical need satisfies the objective component. In either context, a plaintiff establishes deliberate indifference by showing that defendants were aware of facts from which they could infer that such a risk existed and that they actually drew that inference. *Farmer*, 511 U.S. at 837.

4

Nonetheless, a prison official who takes reasonable measures to abate the risk avoids liability, even if the harm ultimately is not averted. *Id.* at 835-36.

*2. Analysis*

Plaintiff's assertions against defendant police officer are deficient under these standards. First of all, plaintiff has not identified any sufficiently serious deprivation, or any deprivation (or serious medical need) whatsoever which occurred as a result of being taken in the police car to the WCDC. Nor does he set forth any state of mind on the part of the Johnson City Police Officer who transported him. For example, he has not maintained that he reported to the police officer that he was having neck pain while en route to the facility. Nor has he alleged that he requested medical care, which the officer refused. Absent any contention that the police officer knew about and disregarded a substantially serious risk posed to plaintiff's health or safety by escorting him to jail in a police cruiser, plaintiff has failed to show any deliberate indifference on the part of the transporting officer. Plaintiff's contentions do not state an Eighth Amendment claim.

Furthermore, if plaintiff is attempting to assert that the Eighth Amendment forbids a prisoner wearing a neck brace or suffering from a neck injury from being transported to jail in a police vehicle, plaintiff has not cited to any authority to support this proposition of law, and the Court is unaware of any. The claim is frivolous because it asserts a non-existent legal interest. 28 U.S.C. § 1915(d).

D. <u>Claims Three and Four</u>

These claims have been combined for discussion because many of the allegations in the third claim mirror or overlap those in the fourth.

Plaintiff maintains that, for the first two weeks of his confinement in the WCDC, he was unable to bathe himself, walk, sit up, get up normally, talk properly, or do anything that he should have been able to do before being released to the custody of the WCDC authorities. Plaintiff further maintains that Southern Health Partners, which runs the medical department

5

at the jail, treated him unfairly and that defendant Head Nurse Emily humiliated him and, without reason, talked to him in a degrading way. Defendant Nurse Stephanie works at the WCDC and has knowledge of what happened to plaintiff. Plaintiff alleges that he complained of not being bathed, but that, throughout his stay at the WCDC, the medical staff denied him a bath. Plaintiff also alleges that a strong body odor emanated from him, that his neck brace was nasty, but that Officer Draper and other employees helped him take his first bird bath.

Plaintiff also made it known that his medication was ineffective, seemingly by screaming at the top of his lungs for two weeks (i.e., July 18th or 19th to August 2nd or 3rd). Nonetheless, plaintiff received only two Ibuprofen a day for his pain. Plaintiff also complained that he needed another neck brace. He could not even be transported to court by the jailers. They told plaintiff that he was such a liability that he was not going anywhere.

One time, he fell in his cell in the booking area, breaking his neck brace. Following this fall, he complained to officers, to no avail. The nurse on duty at the time just asked plaintiff whether he was alright and whether he could move his legs. The nurse then instructed the guards to help him up off the floor and put him on the bed. Lieutenant Perry Allen, who was in charge (or at least plaintiff thinks he was), said that "the nurse (medical) determine (sic) what is done with inmates when it comes to their health period," (Doc. 2 at 3). Plaintiff objected and asked for a grievance, but nothing was done by the administration.

During the time he was in the booking cell (July 17th or 18th to September 22nd of 2009), he had to complain frequently to receive showers or recreation. Plaintiff was told to "shut up" at times, which he did because of what he saw happen to people when they came to jail or who were on their way to lock down. At some point, plaintiff experienced back spasms which caused a second fall. Nothing was done, however, and the grievance he filed concerning the matter prompted no response.

In early July or late August, plaintiff visited a doctor at the East Tennessee State University Brain and Spine Center office. He received another neck brace because the one

6

he was given at the jail had broken and because the broken neck brace was interfering with the healing process in his neck. Plaintiff then saw the jail doctor, who began giving plaintiff more medication. The medical staff, realizing how expensive plaintiff's medical care would be, decided to have plaintiff released, but not before he was allowed to lay and suffer day and night at the WCDC and thereby, to sustain mental and psychological damage, including becoming more paranoid than ever before. The above described conduct, plaintiff asserts, demonstrates that he was neglected, treated inhumanely—worse than an animal, he believes—disrespected, and subjected to cruel and unusual punishment by defendants.

*1. The Law*

The law which applies to this claim is the Eighth Amendment jurisprudence discussed in the prior claim, which requires a showing of a sufficiently serious deprivation and deliberate indifference on the part of a defendant to a prisoner's serious medical need or to a substantial risk to a prisoner's health or safety.

*2. Analysis*

Each sub-claim will be analyzed separately.

*a. Unfair Treatment and Neglect*

Plaintiff maintains that he was subjected to unfair treatment and neglect, but he presents no facts and no developed argument to flesh out his claim. Claims which are devoid of any details do not permit the Court to evaluate the viability of a proposed claim for § 1983 relief. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991) ("[A] *pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted.") A court need not conjure up facts not pled to support conclusory allegations. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). A claim made up entirely of conclusions, as is this one, fails to state a claim for relief. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Even if the claim were not conclusory, an allegation that an inmate has been treated unfairly, without more, does not state a constitutional tort. *See e.g., Perry v. McGinnis*, 209 F.3d 597, 609 (6th Cir. 2000) ("The violation of a fundamental right, however, is necessary for a successful substantive due process claim."); *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999) (An allegation of unfair treatment as an individual does not state an equal protection claim.); *Candelore v. Clark County Sanitation Dist.*, 752 F.Supp. 956, 961 (D. Nev. 1990) (Preferential treatment, while perhaps unfair, does not violate equal protection of the law.)

Additionally, negligent treatment of an inmate does not offend the Constitution. In *Daniels v. Williams*, 474 U.S. 327 (1986), a plaintiff sought damages for injuries sustained when he fell over a pillow left on a stairway in the jail where he was confined. The Supreme Court held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property." *Id.* at 328 (emphasis in original). And, "[i]ndeed, it is well settled that claims of deliberate indifference must be supported by more than mere neglilgence." *Harrison v. Ash*, 539 F.3d 510, 522 (6th Cir. 2008).

  b. *Humiliating and Degrading Treatment*

According to the complaint, Head Nurse Emily humiliated him and spoke to him in a degrading manner. These bald allegations lack any factual elaboration whatsoever. A prisoner's mere allegation of humiliating or degrading treatment, absent some factual description of the treatment or circumstances surrounding such treatment is conclusory. As discussed in the prior claim, conclusory claims fail to state a viable claim for relief under §1983. *Morgan*, 829 F.2d at 12.

  c. *Showering, Recreation, and Bathing*

Plaintiff asserts that he had to complain frequently to receive showers and recreation. This assertion is noteworthy for what it suggests (by negative inference)—that he was

8

Case 2:10-cv-00151-JRG-DHI   Document 5   Filed 11/07/12   Page 8 of 13   PageID #: 28

afforded showers and exercise, though he had to complain to obtain these things. Therefore, since plaintiff does not indicate that he was actually denied a shower or exercise or allege when or for what period of time these things were withheld, his allegations are conclusory. As stated earlier, conclusory claims offer no basis for granting §1983 relief. *Morgan*, 829 F.2d at 12.

Also, the implication from plaintiff's assertions that he had to complain to get a shower somewhat undermine his allegations that the medical staff would not bathe him. It seems somewhat inconsistent for a prisoner to complain that he needs to take a shower while, at the same time, complaining that the medical staff is not bathing him. But be that as it may, the bathing claim itself lacks sufficient factual content to proceed, considering that plaintiff has not identified the person whom he asked for a bath and who then refused to bathe him, indicated the date(s) of the refusal(s), or shown that he had medical orders for medical assistance in bathing, as opposed to being aided by the officer and others whom he mentions helped him bathe. Like the previous claim, the bathing claim is conclusory and, thus, fails to state a valid claim for relief. *Morgan*, 829 F.2d at 12.

Even if the claim were not conclusory and if the Court assumes that plaintiff's need for medical assistance in bathing constituted a serious medical need, *Estelle*, 429 U.S. at 104, or that the failure to give such assistance deprived him of the "minimum civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), or posed "a substantial risk of serious harm" to plaintiff's health and safety, *Farmer*, 511 U.S. at 834, there is nothing to satisfy the "deliberate indifference" element of an Eighth Amendment claim. This is so because plaintiff has offered no contentions concerning the identity of the person who rejected any request by plaintiff for medical assistance in bathing. Without some indication that a defendant possessed the requisite culpable state of mind, there is nothing from which to infer "deliberate indifference."

9

Furthermore, the need was met, the minimal measure provide, and the risk was addressed by the officers who, according to the complaint, helped plaintiff bathe. *Id*. at 835-36 (A prison official who takes reasonable steps to abate the risk avoids liability, even if the harm ultimately is not averted.). The Court sees no constitutional violation here.

   *d. Ineffective Medication*

In his next sub-claim, plaintiff asserts that his medication was ineffective and that he was allowed to suffer and scream for two weeks, with only Ibuprofen offered as an anodyne for the pain he was experiencing. It is important to note what plaintiff is not alleging. For example, he is not contending that he was prescribed a stronger pain medication, but was denied the medication, that he signed up for sick call to inform the medical care provider that his pain was not being alleviated with Ibuprofen, or than any medical care provider refused to see him or hear his complaints about pain. Indeed, he concedes that he received more medication (presumably meaning stronger pain medication) from the jail doctor. If the contention that the jail physician gave plaintiff more medication is intended to imply that the Ibuprofen initially dispensed to him was an inadequate treatment for the pain he was suffering, any such a contention lies outside the scope of conduct proscribed by the Eighth Amendment because, at its core, the contention involves medical negligence.

True, a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering." *Berry v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (citing *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991)). But it is also true that, generally, where a prisoner receives some medical care and the dispute is over its adequacy, no claim has been stated. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). By the same token, no viable Eighth Amendment claim is stated by allegations that a medical condition has been negligently diagnosed or treated, and the mere fact that the victim happens to be a prisoner does not convert it into a constitutional violation. *Estelle*, 429 U.S. at 106.

10

Thus, because the claimed conduct cannot be said to constitute an unnecessary and wanton infliction of pain, the Court concludes plaintiff's allegations regarding such conduct do not state a valid claim under the Eighth Amendment. *Estelle*, 429 U.S. at 105-06; *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (disagreement between prison physician and physician who originally prescribed medications not of constitutional magnitude).

    *e. Neck Brace*

There remains the alleged delay in replacing plaintiff's broken neck brace. A claim for a delay in providing medical treatment for an obvious medical need, i.e., one which a physician has diagnosed as mandating treatment, *see Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004) (listing cases), requires a prisoner to show that "he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id*. at 900.

Here, the length of the delay is unknown because there are no allegations disclosing this information. Thus, it cannot be ascertained as to whether the replacement of the neck brace occurred within a reasonable time frame. Thus, plaintiff's allegations fail to state a claim for a delay in replacing his neck brace.

But if the Court assumed that a functional neck brace was medically required and that the broken brace presents a sufficiently serious deprivation, so as to satisfy the objective prong of an Eighth Amendment claim, there has been an insufficient showing of the subjective component.

While plaintiff maintains that he told the medical staff that he needed another neck brace, he has not identified any Southern Health Partners defendant or WCDC defendant as being the person to whom he complained about his broken neck brace. Nor has plaintiff offered any facts to show that any defendant knew that his neck brace was broken and knew also that the damaged neck brace subjected plaintiff to a substantial risk of harm. And even though plaintiff points to Stephanie and Heather as nurses who were witnesses or "at least

know what happened medically wise," (Doc. 2 at 5), absent allegations from which to infer a culpable state of mind (i.e., deliberate indifference) on the part of a named defendant, there is no basis upon which to find that a colorable Eighth Amendment claim has been stated. *See Farmer*, 511 U.S. at 837 (deliberate indifference illustrated where defendant knows of facts supporting an inference that a risk exists and where defendant actually draws that inference).

   *f. Falling*

Plaintiff maintains, in this last category of claims, that he fell twice. The first time he fell, the nurse checked on him, questioned him as to his condition, ascertained his status, and then had the officers pick him up off the floor and put him on the bed. Plaintiff complained, but was informed by an officer that the nurse was in charge of making decisions concerning an inmate's health. At some point, plaintiff experienced back spasms, which caused him to fall a second time. Nothing was done, however, and the grievance he filed complaining about this episode evoked no response. Eventually, the medical staff, eyeing the expense of rendering medical care to plaintiff, facilitated his release from jail.

Though it is not altogether clear, plaintiff may be asserting that falling, in and of itself, is an actionable Eight Amendment claim. If so, the Supreme Court has found otherwise: "An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain." *Estelle*, 429 U.S. at 105.

The true nature of these allegations appears to be that the nurse should have done more or pursued a different course of action in response to plaintiff's first fall and that someone should have responded the second time plaintiff fell by taking some unidentified action.

With respect to the contentions involving the nurse's response, allegations of "an inadvertent failure to provide adequate medical care" or of a negligently diagnosed or treated medical condition does not state an Eighth Amendment claim. *Id*. at 105-067. Whether additional treatment is indicated is a matter more suitable for medical judgment than for judicial assessment. *Id.* at 107. Here, there is no assertion that the nurse refused to see

12

plaintiff, to assess his condition, or to render medically necessary treatment. *Cf. Boretti*, 930 F.2d at 1154-55 (allegation that nurse refused to treat inmate's surgical wound for five days or provide dressings or pain medication states a claim for deliberate indifference to serious medical needs). The fact that plaintiff disagreed with the nurse's evaluation or believes that more should have been done to address his mishap does not implicate the Eighth Amendment.

As concerns plaintiff's second fall, he has alleged no ensuing injury amounting to a serious medical need. Nor has plaintiff asserted any culpable state of mind on a defendant's part. Without some contentions to establish both the objective and subjective prongs of an Eighth Amendment violation—a "serious medical need" and "deliberate indifference," respectively—this allegation does not state a claim entitling plaintiff to relief under §1983. *See e.g., League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) ("The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief.") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### III. Conclusion

Based on the above discussion, the Court finds that plaintiff has failed to state an arguable claim against defendants. Accordingly, this case will be dismissed by separate order.

**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
